UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MELANIE CICHOCKI,

                                Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              11-CV-755S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

        1.      Plaintiff, Melanie Cichocki, challenges an Administrative Law Judge's ("ALJ")

determination that she is not disabled within the meaning of the Social Security Act ("the

Act").  Plaintiff alleges that she has been disabled since October 20, 2008 due to a seizure

disorder, bipolar disorder, and arthritis in her back. Plaintiff contends that her impairments

have rendered her unable to work. She therefore asserts that she is entitled to payment of

disability benefits under the Act.

        2.      Plaintiff applied for disability insurance benefits on April 7, 2009. The

Commissioner of Social Security ("Commissioner") initially denied her application. Pursuant

to Plaintiff's request, ALJ William M. Weir held an administrative hearing on January 6, 2011,

at which time Plaintiff appeared with counsel and testified.  The ALJ considered the case *de

novo*, and on May 23, 2011, issued a decision denying Plaintiff's application for benefits.  On

August 11, 2011, the Appeals Council denied Plaintiff's request for review.  Plaintiff filed the

current civil action on September 8, 2011, challenging Defendant's final decision.[1]

        3.      On February 6, 2012, the Commissioner filed a motion for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docket No. 9.);

_____

[1] The ALJ's May 23, 2011 decision became the Commissioner's final decision in this case when
the Appeals Council denied Plaintiff's request for review.

Plaintiff followed suit the next month. (Docket No. 13.) The Commissioner filed a response to Plaintiff's motion on March 20, 2012. (Docket No. 14.) For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

4.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990); Molina v. Barnhart, No. 04 Civ. 3201(GEL), 2005 WL 2035959, at *5 (S.D.N.Y. Aug. 17, 2005) (quoting Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998)). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); see also Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.    "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must

2

afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); <u>see also</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. <u>See</u> <u>Bowen</u>, 482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry

is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 16);[2] (2) Plaintiff has the following "severe" impairments, within the meaning of the Act: back pain with objective evidence of mild degenerative disc disease of the lumbar spine; mild facet arthropathy; and a history of seizure activity (R. at 16); (3) Plaintiff's impairments do not meet or equal the criteria necessary for finding a disabling impairment under the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 18); (4) Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff can occasionally be exposed to temperature extremes, and can never work at unprotected heights or around mechanical parts, or operate a motor vehicle in a work environment (R. at 19); and (5) Plaintiff retained the ability to perform her past relevant work as a supermarket cashier and as a bakery clerk. (R. at 21). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time from the alleged onset date through May 23, 2011, the date of his decision. (R. at 22.)

10.      Plaintiff advances four challenges to the ALJ's decision. First, Plaintiff asserts

---

[2] Citations to the underlying administrative record are designated as "R."

that the ALJ erred at step two of the five-step analysis when he found Plaintiff's bipolar disorder to be non-severe; Plaintiff contends that the ALJ improperly assessed some of her treating physician's opinions pursuant to Social Security Ruling ("SSR") 96-2p, and that his ultimate conclusion is not supported by substantial evidence. Second, Plaintiff argues that the ALJ improperly discredited Plaintiff's statements concerning the intensity, persistence, and limiting effects of her mental symptoms. Third, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence, in that he did not find any mental limitations. Plaintiff further asserts that the ALJ's failure to provide a function-by-function assessment warrants remand. Fourth, Plaintiff argues the ALJ erred in finding her capable of past work because he did not provide a specific and substantial inquiry into past work demands.

11.    Plaintiff's first challenge is that the ALJ erred at step two of the analysis when he found Plaintiff's bipolar disorder was non-severe.[3] Plaintiff asserts several related arguments to this end, and, for the reasons set forth below, this Court rejects each of them.

Initially, Plaintiff argues that the ALJ's conclusion is not supported by substantial evidence. In support of her argument, Plaintiff relies heavily on treating physician Dr. Dham Gupta's opinions from two assessments of Plaintiff's ability to do work-related mental activities.[4] (See R. at 525-29, 602-04.) Plaintiff also cites the state agency non-examining review physician's "Mental Residual Functional Capacity Assessment," which found moderate limitations in seven of 20 areas of mental capacity, specifically in her abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain

---

[3] To be severe, an impairment must cause a Plaintiff "more than minimal functional limitations." See 20 C.F.R. § 416.924(c).

[4] As discussed *infra*, this Court finds the ALJ was not required to afford weight to these opinions.

attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (See R. at 470-71.) Additionally, Dr. Bela Ajtai, a neurologist, noted that Plaintiff's psychiatric problems were "the major source of her disability." (R. at 433.)

But this evidence does not necessarily help Plaintiff because, if supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." See Rosado, 805 F. Supp. at 153.  If there was also substantial evidence that her bipolar disorder was non-severe, the ALJ's finding will be sustained. See, e.g., id. Whether the ALJ's conclusion was supported by substantial evidence is necessarily entwined with Plaintiff's related argument that the ALJ violated the treating physician rule at step two. As discussed at length below, this Court finds that the ALJ properly relied on substantial evidence when he found Plaintiff's bipolar disorder to be non-severe.[5]

---

[5] Nevertheless, this Court will briefly address the evidence Plaintiff presented in support of her contention that her bipolar disorder is severe. First, with respect to the state agency non-examining review physician's reports, the Court notes that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Gray v. Astrue, No. 09-CV-00584, 2011 WL 2516496, at *5 (W.D.N.Y. June 23, 2011) (citing Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993)). Secondly, with respect to Dr. Ajtai's statements, this Court notes that a conclusory finding by a medical source that a claimant is "disabled" does not mean the Commissioner will determine the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e); see also Green-Younger v. Barnhart, 335 F.3d at 106 ("'A treating physician's statement that the claimant is disabled cannot itself be determinative.'") (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)).

12.     Plaintiff asserts that the ALJ violated the treating physician rule[6] at step two of the analysis. Plaintiff contends that the treating physician rule required the ALJ to give "controlling weight" to Dr. Gupta's assessments of Plaintiff's ability to complete mental work, and to his opinion that Plaintiff is "psychiatrically disabled."[7] Because the ALJ failed to do so, Plaintiff argues that he improperly cherry picked evidence to support a denial of benefits.

Under the "treating physician rule," an ALJ must give "controlling weight" to the medical opinion of a physician engaged in the primary treatment of a claimant *if* that opinion "is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927, 416.912, 416.913; see Green-Younger, 335 F.3d at 106; Social Security Ruling ("SSR") 96-2p. An ALJ cannot substitute his own judgment for a competent medical opinion. Rosa, 168 F.3d at 79. But only the ALJ can weigh all of the evidence and resolve any conflicts in the record. Richardson, 402 U.S. at 399; Aponte v. Sec'y of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984); see Bethge v. Chater, 896 F. Supp. 301, 317 (W.D.N.Y. 1995). And the final determination of disability is an issue reserved for the Commissioner. 20 C.F.R. 404.1527(d); see also Green-Younger, 335 F.3d at 106 . In that vein, the treating physician rule does *not* require an ALJ to give controlling weight "where, as here, the treating physician issued opinions that are inconsistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

Generally, "the Social Security Administration is required to explain the weight it gives to the opinions of a physician." Snell, 177 F.3d 128, 133 (2d Cir. 1999). SSR 96–2p provides

---

[6] "The 'treating physician rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

[7] These opinions are located at Exhibit 23F, (R. at 525-29), Exhibit 28F, (R. at 602-04), and Exhibit 27F, (R. at 598-601).

that:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

1996 WL 374188, at *5 (S.S.A. Jul. 2, 1996). When an ALJ does not give a treating physician's opinion weight, he must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). SSA regulations provide several factors that the ALJ should assess: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503 (citing 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2)).

As discussed in more detail below, having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's assessment of treating physician Dr. Gupta's conclusory opinions. Substantial evidence in the record is inconsistent with those opinions, including Dr. Baskin's consultative examination results. Dr. Gupta's own treatment notes also indicate that Plaintiff's bipolar is non-severe. Further, the ALJ sufficiently explained his reasoning in his decision.

Plaintiff challenges the ALJ's failure to give weight to Dr. Gupta's October 2010 evaluation, wherein Dr. Gupta checked the "yes" box to indicate Plaintiff was "psychiatrically disabled." (R. at 598.) Plaintiff also challenges the ALJ's failure to give weight to Dr. Gupta's opinions of Plaintiff's mental limitations. These opinions come from two reports, each titled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," ("Form Reports"). Dr. Gupta noted on the Form Reports that Plaintiff was moderately limited in all but two of ten mental work-related tasks. (R. at 525-29, 602-04.) He also opined that Plaintiff

has been so limited since 2000, and that drug and alcohol abuse are not an issue. (Id.) Plaintiff argues that this is substantial evidence that her bipolar disorder is severe, and that the treating physician rule required the ALJ to give these opinions "controlling weight."

However, as the ALJ discussed in his decision, there was substantial inconsistent evidence in the record, some of which came from other medical sources, but some of which also came from Dr. Gupta's own treatment records. For example, Dr. Gupta noted in February 2009 that Plaintiff was doing fine, laughing and smiling, and "making good progress." (R. at 535.) He further noted in April 2009 that Plaintiff was in "good remission," and reported the same in both July and September 2009. (Id.) Dr. Gupta reported in December 2009 that Plaintiff was stable and denied depression and anxiety, and that she continued in remission until June 2010. (R. at 536.) Accordingly, the ALJ gave no weight to Dr. Gupta's conclusory opinion that Plaintiff was "psychiatrically disabled," because it clearly contradicts his own, more detailed treatment notes. (R. at 17.) Dr. Gupta's Form Reports indicate that Plaintiff was disabled since 2000, yet the ALJ pointed out that Plaintiff worked full-time from 2000 through the alleged onset date, indicating she was not as limited as the Form Reports suggest. Furthermore, the ALJ noted that Dr. Gupta's Form Reports stated that drug and alcohol abuse were not an issue, yet the doctor's own February 2009 diagnoses reported cocaine dependence, unspecified stimulant abuse, and alcohol abuse in partial remission. (R. at 17.)

Additional medical examiners' reports are also inconsistent with Dr. Gupta's Form Reports and his conclusory opinion that Plaintiff is "psychiatrically disabled." Dr. Martha Totin, a State agency psychologist, opined that Plaintiff is not disabled and has mostly mild limitations. (R. at 50, 456-73). Plaintiff's counselor, Richard Popson, reported Plaintiff was "doing fine" in 2009, and that her bipolar disorder was in remission. (R. at 422.) He further

reported Plaintiff was fully oriented with at least average cognition. (Id.) Dr. Craig Maclean reported that Plaintiff denied depression. (R. at 522.)

Most significantly, consultative examiner Dr. Renee Baskin found that Plaintiff has psychological problems, but that they are not significant enough to interfere with Plaintiff's ability to function on a daily basis. (R. at 437.) This is consistent with the substantial evidence in the record discussed above. The ALJ also explained in his decision that Plaintiff's daily activities indicate that she is able to complete mental tasks and is not more than minimally limited. (R. at 19-21.)

The ALJ specifically explained that he relied on Dr. Baskin's opinion in finding Plaintiff's bipolar to be non-severe. (R. at 17-18.) He noted that such a conclusion is consistent with Dr. Gupta's detailed treatment notes, not with his conclusory statement that Plaintiff is disabled, nor with his Form Reports. (R. at 17-19.) Having reviewed all of the evidence, as discussed in relevant part above, this Court finds no error in that conclusion.

13.    Plaintiff next argues that the ALJ erred because he did not apply all of the regulatory factors when he afforded no weight to Dr. Gupta's conclusory opinions. Those factors include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503 (citing §§ 404.1527(d)(2) and 416.927(d)(2)).

Although Plaintiff points particularly to the fact that Dr. Gupta is a specialist who has treated Plaintiff since 2002, "omission of the . . . factor analysis . . . is not always grounds for a remand . . .  particularly . . . when the treating physician's opinion is inconsistent with other substantial evidence in the record." Gray, 2011 WL 2516496, at *5 (citing Halloran, 362 F.3d

at 31-32); <u>see also</u> <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1040 (2d Cir. 1983) (an ALJ is not obligated to address specifically each piece of evidence in his decision). This is especially true when the ALJ, as here, "sufficiently explained that [the treating physician's] opinion was inconsistent with the overall record." <u>See</u> <u>Mix v. Astrue,</u> No. 09-CV-0016, 2010 WL 2545775, at *5 (W.D.N.Y. June 18, 2010). The ALJ found that Dr. Gupta's Form Reports and conclusory opinions were inconsistent with the record as a whole, and were even inconsistent with his own, more detailed, treatment notes. (R. at 17.) The ALJ, therefore, did not err.[8]

14.     Further, the ALJ's reliance on Dr. Baskin's assessment was not, as Plaintiff suggests, inappropriate. It is well settled that an ALJ is entitled to rely upon the opinions of consultative examiners, and such written reports can constitute substantial evidence. <u>Gray</u>, 2011 WL 2516496, at *5 (citing <u>Richardson</u>, 402 U.S. at 402). As discussed, the consultative examiner's report was found to be more consistent with other substantial evidence in the record. Accordingly, the ALJ did not err.

15.     Lastly, Plaintiff asserts that the ALJ erred at step two by failing to recontact Dr. Gupta to resolve these inconsistencies. It is true the ALJ had an affirmative duty to develop the record, <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir. 1996), but "an ALJ is required to obtain additional evidence *only* if [he] cannot decide whether a claimant is disabled based on the existing evidence," <u>Gray</u>, 2011 WL 2516496, at *6 (emphasis added). If the ALJ already possesses a complete medical history, he is not obligated to recontact a physician. <u>Id.</u> (internal quotation marks omitted) (citing <u>Rosa</u>, 168 F.3d at 79); <u>see also</u> 20 C.F.R. §

---

[8]It was not improper for the ALJ to decline to give controlling weight to Dr. Gupta's conclusory opinions, yet rely on Dr. Gupta's detailed treatment notes. <u>See</u> <u>Mix</u>, 2010 WL 2545775, at *5 (W.D.N.Y. June 18, 2010) (citing <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1119 (10th Cir. 2004)).

404.1512(e) ("When the evidence we receive from your treating physician . . . is *inadequate* for us to determine whether you are disabled, we will need additional information to reach a determination or a decision") (emphasis added). "The fact that the record does not support the treating physician's opinion does not mean that there are administrative gaps in the record triggering a duty to recontact." Ayers v. Astrue, No. 08-CV-69A, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009) (citing Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2009)).

Here, the ALJ had a complete medical history that included lengthy, detailed reports dating to several years before Plaintiff's alleged onset date. (R. at 193-252.) Plaintiff even submitted medical records unrelated to her alleged impairments. (E.g., R. at 544) (office visit for cellulitis of right foot). Moreover, as discussed above, the ALJ explained how he resolved Dr. Gupta's conflicting opinions by instead relying on Dr. Baskin's opinion and other substantial evidence in the record. (R. at 16-18, 21.) Therefore, he was not required to recontact Dr. Gupta, as there was no need to fill a gap in the record, and because substantial evidence resolved the issue.

Based on the foregoing, this Court finds that the ALJ did not err at step two in finding Plaintiff's bipolar disorder to be non-severe. The ALJ properly explained why he did not afford any weight to some of Dr. Gupta's conclusory opinions. He discussed in great detail why he afforded greater weight to Dr. Gupta's treatment notes and to Dr. Baskin's opinion, and the consistent evidence in the record supports that decision. Therefore, the ALJ did not violate the treating physician rule, and substantial evidence supports his finding that Plaintiff's bipolar disorder is not severe. Accordingly, this Court rejects Plaintiff's first argument.

16.    Plaintiff's second challenge is that the ALJ improperly assessed Plaintiff's

credibility because he failed to specifically mention each of the regulatory factors when he discredited Plaintiff's statements about her mental symptoms' intensity, persistence, and limiting effects. Plaintiff argues this warrants remand. For the reasons set forth below, this Court finds that the ALJ sufficiently assessed Plaintiff's credibility, and will not remand the case on this issue.

When considering a plaintiff's symptoms, the ALJ must follow a two-step process. First, he must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms. SSR 96-7p. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit the plaintiff's functioning. Id. In making that evaluation, an ALJ must assess a plaintiff's credibility when such statements cannot be verified by objective medical evidence. Id.

The ALJ alone decides issues of credibility and this Court must give great deference to those decisions, because the ALJ observed the witness's testimony and demeanor. Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); Serra v. Sullivan, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991). The ALJ should consider the following factors in making this credibility assessment: (1) the plaintiff's daily activities; (2) location, duration, frequency, and intensity of [her] symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3).  However, an ALJ is not required to specifically mention each piece of evidence in detail, and failure to do so does not require remand where, as here, the court can "glean the ALJ's rationale from the rest of the

13

decision." Mongeur, 722 F.2d at 1040.

17.      Plaintiff's argument that remand is warranted simply because the ALJ did not walk through each of the factors in his decision is without merit. Williams v. Astrue, No. 10-CV-499S, 2012 WL 1114052, at *7 (W.D.N.Y. March 30, 2012). "Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are 'sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'" Id. (citing Wischoff v. Astrue, No. 08-CV-6367, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010) (quoting Delk v. Astrue, No. 07-CV-167-JTC, 2009 WL 656319, at *4 (W.D.N.Y. Mar. 11, 20009))).

In light of the substantial discussion in his decision, and in considering the record as a whole, this Court finds the ALJ properly assessed Plaintiff's credibility. He noted that Plaintiff claimed difficulty in concentrating and finishing multiple tasks due to her bipolar disorder, yet her Daily Activities Questionnaire indicated otherwise. (R. at 19). Specifically, Plaintiff was able to do "whatever chores needed to be done," including preparing meals, taking care of pets, doing laundry, weeding and yard work. (R. at 133-36.) She stated she enjoyed bird watching, reading, watching television, and even helped babysit her niece. (R. at 41, 136.)

Plaintiff argues that the ALJ erred when he failed to *specifically* state why he discredited Plaintiff's claims. But since the ALJ discussed Plaintiff's activities, it follows that he considered those activities to be inconsistent with Plaintiff's subjective claims of limitation. He, therefore, did not afford her substantial credibility. It is clear to this Court, as it was to the ALJ, that Plaintiff's daily activities indicate that she was able to complete several tasks which require at least some level of concentration. Therefore she was not "more than minimally limited" by her bipolar disorder. This finding is consistent with Dr. Baskin's assessment and

with the record as a whole.

The Court notes that the ALJ had already sufficiently explained why the medical evidence showed Plaintiff's bipolar was non-severe at step two, and as discussed above, this Court finds no error. Therefore, the ALJ went beyond his legal duty when he explained to Plaintiff that he did consider her statements regarding her bipolar's limiting effects, but he did not find them to be entirely credible. He provided good reasons for his credibility assessment at this step, although he did not mention each of the factors in his decision. Because the ALJ's decision more than sufficiently explains his credibility assessment, and it is supported by substantial evidence in the record, this Court rejects Plaintiff's second argument.

18.    Plaintiff's third argument asserts that the ALJ's RFC determination is not supported by substantial evidence. Plaintiff primarily argues that her bipolar disorder should have been considered in the RFC determination, and the ALJ therefore improperly failed to find any mental limitations. As discussed above, this Court sustains the ALJ's finding that Plaintiff's bipolar disorder is non-severe, and thus Plaintiff's argument fails.

With respect to the *physical* limitations in the RFC, Plaintiff argues that remand is warranted because the ALJ failed to provide a function-by-function assessment of Plaintiff's physical limitations and abilities. For the following reasons, this Court will not remand the case on this issue.

Plaintiff's argument is premised on the requirement that the ALJ provide a "function-by-function assessment of claimant's ability to perform all the requirements of [her] RFC," and that each function be separately considered. SSR 96-8P. Specifically, this regulation provides that "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven

15

strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately." Id.

The ALJ did not lay out a function-by-function assessment in his decision. Plaintiff cites a string of authority in support of remand for this error. Plaintiff's reliance on the one case from this District, Hogan v. Astrue, however, is misguided. See 491 F. Supp. 2d 347 (W.D.N.Y. 2007). The case was remanded in Hogan for reasons other than merely failing to provide a function-by-function analysis; the ALJ failed to cite a single medical source and did not explain why he did not give weight to a medical opinion that contradicted his RFC determination. Id.

Plaintiff notes that "the Northern District of New York has repeatedly found it error to not make a function-by-function analysis." (Pl.'s Mot. for J. on the Pleadings at 21; Docket No. 12) (citing Hluska v. Astrue, No. 06-CV-0485 (LEK), 2009 U.S. Dist. LEXIS 102225, at *50 (N.D.N.Y. Feb. 13, 2009)). Yet Plaintiff fails to note that, more recently, the Northern District courts have actually held to the contrary. See, e.g., Sanderson v. Astrue, No. 08-CV-1177 (GTS/VEB), 2011 WL 1113856, at *5 (N.D.N.Y. Jan. 19, 2011) (function-by-function analysis not reversible error where RFC is supported by substantial evidence). Plaintiff also failed to mention that courts in this district have recently applied a harmless error standard and declined to remand for the failure to express RFC in a function-by-function analysis. See, e.g., Drennen v. Astrue, No. 10-CV-6007MAT, 2012 WL 42496, at *5-*6 (W.D.N.Y. Jan. 9, 2012).

19.     Here, the ALJ's decision may not have the specificity of a function-by-function analysis, but it is certainly not conclusory. Accordingly, this Court finds that the ALJ's failure to conduct a function-by-function analysis, as stated in SSR 96-8p, was harmless error.

Unlike Hogan,  the ALJ here discussed in great detail Plaintiff's medical history. (R.

16

at 19-21.) Specifically, the ALJ discussed records from treating physician, Dr. Maclean, which were often "unremarkable" and indicated Plaintiff retained significant physical abilities. (R. at 283, 284, 286, 488-93.) The ALJ also looked to Dr. Ajtai's records regarding Plaintiff's single seizure episode. (Id.) Dr. Ajtai consistently stated that Plaintiff had not had another seizure and was doing well and was stable from a neurological standpoint. (R. at 432-33, 444-45, 609.) The ALJ also cited Plaintiff's own testimony in the RFC assessment, both from the hearing and from Plaintiff's written submissions. (R. at 19-21.) For example, Plaintiff reported no limitations with respect to her abilities to sit, stand, walk, kneel, or climb stairs. (R. at 19, 137.) Yet, the ALJ afforded Plaintiff the "benefit of the doubt" with respect to her back pain, despite the lack of objective medical evidence. (R. at 21.) Plaintiff rarely complained of physical limitations, and thus the RFC determination was proper, and this Court rejects Plaintiff's third argument.

20.    Plaintiff's fourth argument asserts that the ALJ erred in finding her capable of past work because he did not provide a specific and substantial inquiry into her past work's demands. Plaintiff's main objection is the ALJ's failure to inquire about the *mental* demands of Plaintiff's prior work as a supermarket cashier and bakery clerk, particularly because Plaintiff was fired from each of these jobs for misconduct or failure to follow work procedures. Because the ALJ properly determined Plaintiff does not have a severe mental impairment, Plaintiff's argument is, on this point, now moot.

However, Plaintiff also argues that the ALJ made no specific findings as to the *physical* demands of Plaintiff's past work as a supermarket cashier and bakery clerk. Plaintiff asserts that this is reversible error. For the reasons set forth below, this Court finds the ALJ did not err in finding Plaintiff could physically perform her past work as a bakery clerk.

The ALJ cited evidence of Plaintiff's past work, which he gathered from Plaintiff's own

hearing testimony and other relevant information that she provided to the SSA. (R. at 21.) Clearly, then, the ALJ considered this evidence, and it is consistent with his conclusion. Moreover, an ALJ is not obligated to address specifically each piece of evidence in his decision. See Cutler v. Astrue, No. 10-CV-663A, 2011 WL 3844163, at *6 n.5 (W.D.N.Y. Aug. 30, 2011) (ALJ is not required to mention every piece of evidence if the record is detailed enough to allow reviewing courts to "glean the rationale of an ALJ's decision") (quoting Mongeur, 722 F.2d at 1040).

21.     After reviewing the record as a whole, particularly the evidence the ALJ specifically referred to in his decision, this Court can glean the ALJ's rationale and finds that his conclusion is supported by substantial evidence. Plaintiff was properly deemed capable of performing "light work as defined in 20 C.F.R. § 404.1567(b) except that [she] can occasionally be exposed to extreme heat or cold, and never work at unprotected heights or around mechanical parts, and never operate a motor vehicle in a work environment." 20 C.F.R. § 404.1657(b); (see also R. at 19.) Light work involves lifting no more than 20 pounds at a time occasionally, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1657(b); (see also R. at 19.) Light work can include jobs that require extensive walking or standing. Id.; (see also R. at 19.)

Plaintiff described in detail her duties as performed as cashier and bakery clerk. (R. at 126-130,190-92.) According to Plaintiff's Work Background questionnaire, her cashier job was mostly performed standing, and she reported that she frequently lifted less than 10 pounds. (R. at 128.) But Plaintiff also reported that the heaviest weight she lifted as a cashier was 50 pounds, which would fall outside her RFC as calculated by the ALJ. (Id.) Although Plaintiff does not raise this apparent discrepancy, this Court finds it to be harmless because Plaintiff can perform her past work as a bakery clerk.

18

According to Plaintiff, the bakery clerk position required lifting less than 10 pounds frequently, and the heaviest weight she lifted was 20 pounds. (R. at 127.) Plaintiff reported that she packaged baked goods, used a bread slicer, decorated cakes, took orders, and took out trash. (Id.) The job required frequent standing, but never required crawling, crouching, climbing, or kneeling. (Id.) Thus, the bakery clerk position was certainly within the RFC, which, as previously discussed, was supported by substantial evidence.

Additionally, Plaintiff testified at the hearing that she could not perform her prior duties as a cashier or bakery clerk because they would "just be hard" and because of "the fear of failing." (R. at 41.) Nothing in Plaintiff's testimony indicates she would be unable to perform this work because of her *physical* limitations. This is consistent with the ALJ's RFC determination, and therefore this Court finds no reversible error on this point.

22.     After carefully examining the administrative record, this Court finds no cause to remand this case to the ALJ for further administrative proceedings. Therefore, Defendant's motion for judgment on the pleadings is granted, and Plaintiff's similar motion is denied.

****

IT IS HEREBY ORDERED, that Plaintiff's Motion for Summary Judgment (Docket No. 13) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:   July 28, 2012
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court